UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

MICHAEL CHANEY,

    *Plaintiff*

v.

ELIJAH BOYD,
DELVANA HUGGINS,
ROBERT HIGGINS, and
DONALD LEDBETTER

    *Defendants*

CIVIL ACTION
NO. _____
**JURY TRIAL DEMANDED**

## COMPLAINT

## PRELIMINARY STATEMENT

This is a civil rights action brought under 42 U.S.C. § 1983 and Georgia state law alleging deliberate indifference to the safety of Mr. Michael Chaney and breach of ministerial duties by Defendants. Mr. Chaney was held at Carroll County Jail pending criminal proceedings against him. While incarcerated, Carroll County Jail personnel were aware of the threat to Mr. Chaney's safety posed by Mr. Richard Jabar Lawson, another inmate who had previously threatened bodily harm against Mr. Chaney. Jail officials knew of this threat but responded with deliberate indifference and/or a breach of their ministerial duties by refusing to properly document the threat when it was reported, refusing to properly segregate Mr. Chaney and Mr. Lawson as required by Jail policy, continuing to disregard the threat that Mr. Lawson posed even

1

when it was apparent and obvious, and disregarding their duty to supervise Mr. Lawson when in the same areas as Mr. Chaney.

Due to the deliberate indifference of Defendant jail officials, Mr. Lawson was left unattended with direct access to Mr. Chaney's living space, where he brutally and violently assaulted Mr. Chaney, causing severe damage to Mr. Chaney's body, breaking his bones, causing Mr. Chaney to temporarily lose eyesight in one eye and lose the ability to eat properly, and causing additional chronic and permanent injuries, namely pain, nerve issues, vision problems, dizziness, and other medical ailments that have not subsided. Mr. Chaney's face is permanently disfigured. Mr. Chaney has also suffered severe emotional distress as a result, being unable to sleep, and feeling unsafe and on edge around other people. Mr. Lawson has since pled guilty to multiple criminal charges resulting from this attack. Defendants are liable for the harm to Mr. Chaney where their actions constituted deliberate indifference to a threat to Mr. Chaney's safety and breaches of ministerial duties.

## JURISDICTION, VENUE & ADMINISTRATIVE EXHAUSTION

1. This Court has jurisdiction over the subject matter of the complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, and ancillary jurisdiction over Mr. Chaney's state law claims under 28 U.S.C. § 1367.

2. Venue is proper where the events in question took place in this district and where, on information and belief, Defendants reside in this district.

3. Mr. Chaney's complaint is not subject to the rules of the Prison Litigation Reform Act (PLRA) where he is no longer being held by the Carroll County Jail.

4. Nonetheless, Mr. Chaney sufficiently exhausted administrative remedies related to this complaint under the terms of the PLRA where he filed appropriate grievances within the Carroll County Jail, which were received and acknowledged by Defendants and held by the Carroll County Jail.

## PARTIES

*Plaintiff*

5. Plaintiff Mr. Michael Wesley Chaney was at all times relevant incarcerated at the Carroll County Jail.

*Defendants*

6. Defendant Elijah Boyd is a former correctional officer at the Carroll County Jail. Mr. Chaney had verbally informed Defendant Boyd months before the attack that Mr. Lawson had threatened him and he needed to be moved to a different pod; Defendant Boyd disregarded this report. On the day that Mr. Chaney was violently assaulted, Defendant Boyd was personally responsible for escorting Mr. Lawson through the shared common area in which Mr. Lawson had physical access to Mr. Chaney. Defendant Boyd disregarded this duty even as Mr. Lawson, standing outside the cell block common area, was screaming verbal threats of violence at Mr. Chaney. Defendant Boyd ignored these threats. Defendant Boyd belatedly arrived at the cell block after Mr. Lawson's attack to secure Mr. Lawson. At all times relevant, Defendant Boyd was acting under color of state law. He is sued in his individual capacity.

7. Defendant Delvana Huggins is or was a correctional officer at the Carroll County Jail. Along with Defendant Boyd, Defendant Huggins also received a verbal report from Mr.

      Chaney about Mr. Lawson's threats to his safety and associated request to be moved. On information and belief, while Defendant Huggins communicated Mr. Chaney's request to be moved, Defendant Huggins failed to properly report that Mr. Chaney's request was due to a threat to his safety, and as a result, Mr. Chaney was only moved to a different floor in the same cell block rather than a different cell block altogether. Mr. Chaney was therefore left vulnerable to Mr. Lawson's attack. At all times relevant, Defendant Huggins was acting under color of state law. She is sued in her individual capacity.

8. Defendant Robert Higgins is or was a correctional officer at Carroll County Jail. On information and belief, Defendant Higgins was notified of Mr. Chaney's request to be moved and confirmed Mr. Chaney's movement to a different floor in response. However, Defendant Higgins failed to properly report the reason for the requested move and, as a result, Mr. Chaney was only moved to a different floor in the same cell block rather than a different cell block altogether. As a result, Mr. Chaney was left vulnerable to Mr. Lawson's attack. At all times relevant, Defendant Higgins was acting under color of state law. He is sued in his individual capacity.

9. Defendant Donald Ledbetter is a current or former correctional officer at Carroll County Jail who was responsible for monitoring video surveillance over the cell block in which the underlying assault took place on the day and at the time when the attack took place. Defendant Ledbetter's failure to properly supervise and secure Mr. Lawson permitted Mr. Lawson to enter Mr. Chaney's pod and violently attack him. Defendant Ledbetter was acting under color of state law at all times relevant. He is sued in his individual capacity.

10. All Defendants are jointly and severally liable for the injuries to Mr. Chaney resulting from the conduct described herein.

## FACTUAL ALLEGATIONS

*Mr. Lawson's Threats to Mr. Chaney and Jail's Response*

11. Mr. Lawson and Mr. Chaney were both housed on the same floor of the same cell block in Carroll County Jail.

12. Inmates housed on the same floor in the same cell block could access the shared cell block common space at the same time.

13. Inmates on different floors of the same cell block would be given access to the shared common space at different times.

14. Inmates who need to leave their cell for an appointment, such as meeting with an attorney, are escorted by Jail officers, including when they pass through the common area while inmates from the other floor are using it.

15. In the months preceding his brutal assault of Mr. Chaney, Mr. Lawson had repeatedly threatened Mr. Chaney with harm.

16. Threatening someone with violence is a criminal act.

17. As they were on the same floor, Mr. Lawson had physical access to Mr. Chaney during recreational times in which the inmates had access to a shared common space.

18. Mr. Chaney feared that Mr. Lawson would physically assault him, and requested the intervention of jail officials.

19. First, Mr. Chaney verbally reported the circumstances to Defendant Boyd.

20. On information and belief, Defendant Boyd took no measures to document the report or to ensure Mr. Chaney's protection by moving him.

21. Mr. Chaney, remaining in fear of a physical assault where neither he nor Mr. Lawson had been assigned new housing after reporting the threat to Defendant Boyd, notified Defendant Huggins that he had been threatened and wanted to be moved.

22. Shortly thereafter, Mr. Chaney was moved to a different floor of the same cell block.

23. An internal report dated June 19, 2020, signed by Defendant Higgins and disclosed to Mr. Chaney through the administrative grievance process in 2021 indicates that Mr. Chaney was moved on or around June 19, 2020, but does not indicate any details as to why he was moved or mention that he had been threatened.

24. In the same disclosure, a shift supervisor disclosed to Mr. Chaney that no threat from Mr. Lawson and no "no contact" requirement between Mr. Chaney and Mr. Lawson had been logged by Defendant Higgins or any other Jail personnel until after Mr. Lawson's assault, and that had such a threat been properly reported, Mr. Chaney would have been moved to a different cell block entirely.

*Unsupervised, Mr. Lawson Violently Assaults Mr. Chaney*

25. On September 16th, 2020, Mr. Lawson was scheduled to speak with his attorney.

26. After speaking to his attorney, Mr. Lawson left the attorney booth.

27. As he was moving through the facility from the attorney booth to his cell, Mr. Lawson needed to be escorted by an officer back to his cell, including when moving through the common area where Mr. Chaney and others from his floor were present for recreation.

28. As Mr. Lawson stood outside the cell block, he could see Mr. Chaney through the glass.

29. Mr. Lawson began yelling and repeating violent threats while standing outside the cell block door.

30. Even though Defendant Boyd was tasked with escorting Mr. Lawson back to his cell, Defendant Boyd did not do so and left Mr. Lawson unattended.

31. Furthermore, even though Mr. Lawson made loud verbal threats of violence against Mr. Chaney placing Defendant Boyd and anyone else within hearing distance of the threat Mr. Lawson posed to Mr. Chaney, Defendant Boyd left Mr. Lawson unattended.

32. After yelling threats at Mr. Chaney, Mr. Lawson approached the door to the cell block at roughly 2:44PM, according to Carroll County Jail surveillance footage.

33. Roughly ten seconds later, Mr. Lawson walked into the shared living area of the cell block and confronted Mr. Chaney.

34. Mr. Chaney stood in front of Mr. Lawson as Mr. Lawson berated him and insulted him.

35. Mr. Chaney's hands remained by his side as Mr. Lawson escalated from berating him to moving his face directly in front of Mr. Chaney's face.

36. Mr. Lawson then punched Mr. Chaney in the face, tackled Mr. Chaney to the ground and held his head and body to the floor with his own body.

37. Mr. Lawson then brutally struck Mr. Chaney in the face, head, and torso sixteen times before two inmates – not the Defendants – broke up the assault.

38. Defendant Ledbetter saw the attack through the surveillance system that he was tasked with monitoring.

39. Defendant Ledbetter notified Defendant Boyd via radio of the attack.

40. On information and belief, Defendant Ledbetter did not notify Defendant Boyd of the attack immediately, as the attack went on uninterrupted for over a minute.

41. In total, Mr. Lawson's unsupervised entry, verbal confrontation, physical violence, and restraining from other inmates lasted for nearly two minutes before Defendant Boyd belatedly arrived to the cell block after having left Mr. Lawson unattended.

42. Only after the attack was completed did Defendant Boyd and other Carroll County Jail officers arrive to take Mr. Lawson into custody and address Mr. Chaney's injuries.

43. Only after the attack was a "no contact" restriction between Mr. Chaney and Mr. Lawson logged into the Carroll County Jail's internal system.

*Injuries to Mr. Chaney*

44. Mr. Chaney's injuries were serious.

45. Mr. Chaney suffered multiple fractures to bones in his face, including his jaw (fracture to maxillary alveolar socket wall closed anterior and/or fracture to right maxillary alveolar socket) and to his eye socket (closed fracture to the right orbital floor), leaving him partially disfigured.

46. Mr. Chaney suffered damage to his eye, leaving him partially blind for several weeks.

47. Similarly, Mr. Chaney was unable to eat properly for several weeks due to the injuries to his jaw, resulting in weight loss.

48. Mr. Chaney's eyesight has not fully recovered since the attack.

49. Mr. Chaney continues to suffer serious pain, dizziness, and ringing ears as a result of these injuries.

50. Mr. Chaney's face is disfigured as a result of the injuries.

51. Mr. Chaney has suffered serious emotional and psychological trauma.

52. Mr. Chaney has difficulty sleeping at night as a result of the psychological anxiety and distress the attack caused him.

53. Mr. Chaney has difficulty interacting with others normally out of fear that, like Mr. Lawson, they might suddenly strike.

*Mr. Lawson's Prosecution and Plea*

54. On November 30th, 2021, Mr. Lawson knowingly and voluntarily pled guilty to felony charges of aggravated assault, aggravated battery, and unlawful acts of violence in a penal institution growing out of his attack on Mr. Chaney.

*Applicable Standard Operating Procedures*

55. At all times relevant, Carroll County Jail personnel, including Defendants, were bound by certain Standard Operating Procedures (SOPs) that regulated the conduct underlying this incident, described herein.

56. Multiple SOPs require Jail personnel, including Defendants, to report the kinds of threats that Mr. Lawson made toward Mr. Chaney when Mr. Chaney brought those threats to their attention.

57. SOP #J010 ("Subject: Jail Organization") mandates that "Members of the Jail Division are responsible for, but not limited to duties of: security of the detention center and the inmates therein...the safety and well-being of inmates & prisoners left in their charge and care…<u>relaying information to supervisor(s) concerning incidents within and surrounding the facility involving injury or illness to employees or inmates as a result of exposure to bodily harm or contamination</u>" (emphasis added).

58. SOP #J070 (Subject: Records and Information"), which prescribes the use of "Uniform Crime Incident Reports" for "reporting incidents of criminal occurrence and activity," states "It is the responsibility of the initial officer arriving on the scene of an incident or <u>receiving the initial complaint from a victim</u> to complete and submit a Uniform Crime Incident Report, commonly referred to as an Incident Report. It is the responsibility of the officer's supervisor to review and approve all Incident Reports submitted to him/her." (emphasis added).

59. SOP #J070 further clarifies, under the subheading "Jail Incident Report" that "[a Jail Incident Report] is to be utilized for documenting events, occurrences, and incidents that are **not of a criminal nature**, but require or necessitate documentation for further reference actions taken or not taken by the officer and/or Office concerning a particular matter. **If there is an offender, use a Uniform Crime Incident Report.**" (emphasis in original).

60. SOP #J080 ("Subject: Jail Operations") further mandates that "Supervisors will be notified at once of any criminal activity occurring in the jail, with Uniform Incident Reports and other supplementing documents completed and submitted prior to end of shift of duty."

61. Additionally, SOP #J090 ("Inmate Disciplinary Procedures") states "The Disciplinary Report is used for minor rule & regulation violations. When writing a DR, the officer should check the inmate's record on the Jail computer to obtain necessary information. A listing of witnesses to the incident should be compiled, whether staff, visitor, or inmate. If any type of force was utilized to control a situation, explanation will be included in the

report. If anyone requires medical attention as result of the incident, that too shall be noted in the report. A brief description of what occurred will be part of the required format of the report. The report will be submitted to the supervisor, who will in turn submit the report to the Jail Administrator for review and action. If the incident requires immediate attention, the supervisor will have authority to handle the situation."

62. Protocols documented in the applicable SOP require corrective steps to be taken regarding housing under certain circumstances.

63. Specifically, SOP #J080, under the subheading of "Special Management Inmates," states "**Administrative Separation:** is for any inmate whose continued presence poses a threat to life, property, facility operations, and/or who is waiting investigation of a rule violation" (emphasis in original).

64. SOP #J080 continues "Other factors to consider when classifying inmates for housing include, but are not limited to:...victimization potential: for situations where an inmate may be singularly target [sic] for physical or sexual abuse or assault."

65. An applicable SOP also requires officers to follow certain protocols when escorting inmates.

66. SOP #J030 ("Subject: Operational Standards") mandates, under the headings of "Inmate Control & Transportation: Escorting Inmates," that "While walking with an inmate, an officer should walk beside, but slightly to the rear, with the officer's firearm to the opposite side from the inmate. Never let an inmate lag behind, in addition, an officer should not allow anyone to pass between him/her and an inmate."

67. SOP #J030 continues, "An escorting officer should use extreme caution in handling a mentally disturbed or psychotic inmate or person. If the person appears physically or mentally unfit to be escorted, the officer should report to a supervisor before escorting. If violence is suggested or expected while escorting mentally disturbed persons, officers will seek additional assistance as appropriate."

68. SOP #J030 makes clear that escorting an inmate properly, including to attorney calls, requires preventing them from touching anyone: "Inmates are not allowed to talk to civilians. Nor can they physically touch anyone, including their attorney."

## CLAIMS FOR RELIEF

### COUNT I: Against Defendants Boyd, Huggins, and Higgins
### Breach of Ministerial Duties
### GA Const. Art. I, § II, ¶ IX(d)

69. Defendants, as Carroll County Jail employees subject to applicable Standard Operating Procedures, had ministerial duties to properly report and document threats of violence against Mr. Chaney, ensure that Mr. Chaney was housed appropriately to protect him from threats, and to properly escort inmates, including Mr. Lawson, so that they could not touch other people let alone violently attack them.

70. The applicable SOPs created no discretion as to the Defendants' duties.

71. Defendants Boyd, Huggins, and Higgins all breached their ministerial duties where they did not follow the proper protocol, as described by the relevant SOPs (see ¶¶ 56-64) in responding to Mr. Chaney's reports of threats to him.

72. Specifically, neither Defendant Boyd, Huggins, nor Higgins filed a Uniform Criminal Incident Report upon being made aware that Mr. Chaney had been threatened, and in fact, Defendant Boyd did nothing at all.

73. And insofar as Mr. Lawson's threats may not have been criminal or their criminal nature had not been adequately described, neither Defendant Boyd, Huggins, nor Higgins filed an alternative Jail Incident Report or Disciplinary Report either.

74. Neither Defendant Boyd, Huggins, nor Higgins ensured that a shift supervisor was made aware of these threats.

75. And where they failed to report these threats, Defendants also violated their ministerial duty to ensure that Mr. Lawson was subject to administrative separation as mandated by SOP #J080 and/or that Mr. Chaney's housing was reclassified to address his vulnerability to Mr. Lawson's threats.

76. These breaches are in spite of the fact that Mr. Chaney clearly communicated his concerns to Jail personnel, resulting in his limited but insufficient move between floors, as described in the disclosures made to Mr. Chaney (see ¶¶ 23-24).

77. Defendant Boyd further failed to perform a ministerial duty where he did not follow the procedures prescribed by SOP #J030 to escort Mr. Lawson back to his cell.

78. Specifically, Defendant Boyd did not walk beside Mr. Lawson, nor prevent Mr. Lawson from "lagging behind" as he left Mr. Lawson unattended, nor prevent others from getting between himself and Mr. Lawson.

79. Furthermore, where Mr. Lawson was exhibiting mental instability by yelling violent threats at Mr. Chaney through the window, Defendant Boyd failed to seek additional assistance or otherwise restrain Mr. Lawson.

80. Finally, Defendant Boyd disregarded his duty to prevent Mr. Lawson from touching anyone.

81. These breaches of ministerial duties proximately caused Mr. Chaney's injuries where they were ultimately what permitted Mr. Lawson to have unrestricted physical access to Mr. Chaney without any intervention, allowing Mr. Lawson to brutally attack Mr. Chaney.

**COUNT II: Against Defendants Boyd and Ledbetter**
**Deliberate Indifference Toward a Substantial Risk of Harm**
**U.S. Const. Amends. VIII and XIV and 42 U.S.C. § 1983**

82. Defendants, as jail officials overseeing Mr. Chaney's living quarters within the jail, had a duty not to treat substantial risks of harm to Mr. Chaney's safety with deliberate indifference.

83. Defendants Boyd and Ledbetter had actual knowledge of the substantial risk of harm posed by Mr. Lawson, and hence, Defendants had actual knowledge of the substantial risk of harm posed to Mr. Chaney.

84. Specifically, Defendant Boyd knew that Mr. Lawson was a threat to Mr. Chaney where Mr. Chaney had initially reported his concerns to Defendant Boyd to no avail, and where Mr. Lawson was loudly screaming threats of violence at Mr. Chaney from outside the door where Defendant Boyd left Mr. Lawson unattended.

85. Defendant Ledbetter became aware of the threat Mr. Lawson posed when witnessing the attack that Mr. Lawson carried out against Mr. Chaney through video surveillance.

86. Defendants Boyd and Ledbetter were deliberately indifferent to that threat where they did not properly supervise Mr. Lawson despite being aware of the need to secure him because of the risk of harm his unsecured movement would pose to others, including Mr. Chaney.

87. Defendant Boyd was deliberately indifferent where he left Mr. Lawson unattended despite his duty to supervise him even as he screamed threats of violence against Mr. Chaney before soon carrying them out.

88. Defendant Ledbetter was deliberately indifferent to the threat posed by Mr. Lawson where, in spite of his role to monitor security footage in Mr. Chaney's cell block, he only belatedly addressed Mr. Lawson's physical assault on Mr. Chaney.

89. Defendants' deliberate indifference to that risk is underlined by the fact that Mr. Lawson's attack on Mr. Chaney continued for over a minute before any intervention, indicating they were not even paying attention to where Mr. Lawson was, much less whether he was secured.

90. Where Defendants failed to properly ensure that Mr. Lawson was secured so that he could not attack Mr. Chaney despite the obvious threat his unsecured movement posed, and failed to properly intervene in a timely manner when the attack took place, Defendants are jointly and severally liable for the resultant damages to Mr. Chaney, described infra.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Chaney respectfully requests:

1. A trial by jury;

2. Compensatory and Punitive Damages as to all Defendants;

3. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) & (c) and O.C.G.A. § 13-6-11 and as otherwise permitted by law;

4. Any additional relief that this Court deems just and proper.


Respectfully submitted this 16th day of September, 2022.

/s/ Amith Gupta
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE, #2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+legal@gmail.com